My name is John Stolze. I represent the plaintiff appellant Brandon King and his civil rights appeal based off of a failure to motion to remand his civil rights claims from state court. Opposite of him is his current employer, United Parcel Service, Inc., who originally removed the civil rights claims from state court to federal court. Procedurally, this case is very similar to the panel's previous decision in Walsh-Lager v. Royal-Canon and then the United States Supreme Court decision in Royal-Canon v. Walsh-Lager. I'm going to ask you to pause just a second. Can we start the clock? Oh, I'm sorry. Thank you. I thought I started. I apologize. You got a little bonus intro bit there. There you go. I'm sorry. Hopefully, I don't have to go overly long with that. We're going to make you start over. There you go. Kind of a mixed blessing that he gets more time, isn't it? Essentially, Mr. King, the second he got removed to federal court, within the appropriate amend as of right rule, he amended to remove allegations that have anything to do with the collective bargaining agreements, which by the defendants and the collective bargaining agreements, therefore, allowed the court to have federal question jurisdiction under the LMRA. The plaintiff believes that that was incorrectly ruled upon and that the federal court never had jurisdiction. Well, this case is different. I think you actually have the entire Walsh-Lager panel up here by happenstance. This case is different than Walsh-Lager because there what we had was purely state law claims in the end. I understand your argument that these are purely state law claims, but there's this doctrine of complete preemption that says we don't care what the nature of the claims are. They are federal if they involve the interpretation of a collective bargaining agreement. I think that's what the district court is saying here. Well, I don't think that's what the district court was saying because the district court decided instead to utilize the original petition and its determination. At the end of the day, what the United States Supreme Court, and I believe what this panel ruled in the Walsh-Lager v. Royal Canning case, is that the doctrine of complete preemption takes a back seat when jurisdictional basis is established. Now, there was, as a caveat, I believe footnote two in this panel's decision had to do, or maybe footnote one, had to do with if there was a requirement or mandatory necessity to amend. But as of right then and there, the second that it's amended, your honor, that becomes the determinative document for jurisdiction. Well, let me just, I'm going to quibble with that some because if you look at the complaint, the hostile work environment and the discrimination claims, the basis for the discrimination is I shouldn't have worked on Saturdays. I mean, there's other stuff too, but that's the main one. You mean aside from being terminated? Yeah, yeah. For various ridiculous reasons over and over and over again. Fair enough. For things that others did not do, yes. But the main point was the Saturday. I mean, that was the one that kind of pervaded all of the claims. And to be able to figure that out, that's why I'm saying we can eliminate everything else. To figure that out, you have to look at the collective bargaining agreement to see if somebody at his seniority level needs to work on Saturdays or doesn't work on Saturdays. And so no matter what you do, the fact finders can have to look at that collective bargaining agreement. Absolutely not. I would push back with this court's decision in Lingle with the fact that, in fact, it has everything to do with the intentions. And just because a defense, the defendants may have some sort of defense. It's not about their defense. It's about your prima facie case. You have to prove that he was in the class of people who were not required to drive on Saturday. And that can't possibly be decided without looking at the terms of the collective bargaining agreement and construing it. Can it? Of course it can. Suppose the collective bargaining agreement said people of this seniority level have to on Saturdays. How does that not require looking at the collective bargaining agreement? Your Honor, we can debate ifs, ands, or whatever facts may exist. But that fact, Your Honor, does not exist. Well, I'm sort of flabbergasted. I'm trying to figure out how in the world that you can say that he's got duties to perform as an employee, but you don't look at the contract of employment, which is the CBA. I mean, I'm just having a really hard time with that. And I don't know how you get to that point. And I mean, it may be that I'm not very smart, but I don't understand it. I don't believe you would have gotten here without being one of the smartest people in the United States, Your Honor. However, flattery aside, one of the things that I think can happen is that there's actual case law, and we cited to it in the brief, that establishes just because the collective bargaining agreement provides specific rights does not mean that the interpretation of the claim itself that provides these same rights somehow requires interpretation of the collective bargaining agreement. And I believe the amended petition especially spells that out, because the claims themselves do not change when you remove all references to the collective bargaining agreement. What do you do about BOLT? I mean, I'm kind of flabbergasted at the argument, too. But what do you do about BOLT? There it was fitness for duty. Again, it was LMRA and an Energy Reorganization Act. I forget the exact name of the act. Your Honor, I think this case is more in line with the Markham case. I think we cited that again in the brief, that it's had more to do with the fact that the fitness of duty, he's not contesting that the fitness of duty or anything along those lines have anything to do with or incorrect. For instance, on page 25 of our brief, we referenced that Markham did not challenge the Joint Apprenticeship or training committee's authority to place, transfer, or terminate his apprentice agreement. However, he alleged that his disability contributed to it, and therefore the court, this court found that there was not any sort of, that it didn't, there wasn't intertwining, it didn't turn on the collective bargaining agreement. Instead, the collective bargaining agreement in and of itself- Let me ask you this. If you're going to distinguish it that way, are you telling me that as a matter of fact, the collective bargaining agreement says nothing at all about who works on Saturdays and who works on weekdays? No, I think the defendants brought out mentions who works on Fridays and who works on Saturdays. Isn't that case over? I believe the district court mentioned that too, but that doesn't change. No, it doesn't end the case, Your Honor, because it has to turn on the collective bargaining agreement. And when only that provision is there, that does not turn his case, his hostile work environment, his harassment, excuse me, same thing, his termination, his retaliation, don't turn on those ideas, Your Honor. How could they- Sorry. So let me just, I'm going to put it plain, which is how could he have been treated negatively as to the Saturdays? Leave everything else aside because this is the, how could he have been treated negatively if the collective bargaining requires him to work on Saturdays because of whatever it says about who works on Saturdays? I don't know how you could say that's an adverse employment action without knowing whether it was contractually required for him to work on Saturdays. I think that turns back to, Your Honor, the fact that there is Eighth Circuit precedents, and I believe the United States Supreme Court has precedents, that says just because it provides the same, it provides a same or similar protection, the collective bargaining agreement, the contract in and of itself provides the same- I don't think you're answering my question though. I mean, how can you figure that, how can you figure that out, whether it's an adverse employment action, if, without figuring out whether the collective bargaining agreement requires him or doesn't require him to work on Saturdays? See, Your Honor, I think what you're, there's a disconnect between, I think, your interpretation and my interpretation of what it requires of the collective bargaining agreement, Your Honor. I think what you're talking about is just, well, yeah, we're reading this. That doesn't require interpretation, just reading the collective bargaining agreement or personally referencing it doesn't require interpretation. Where do the employment duties come from, if not from the CBA? Various other- What evidence do you have that they've come from somewhere other than the CBA? Your Honor, I don't have the amended petition off of, memorized off the top of my head right now, but I can tell you that there's other references in the amended petition as to issues regarding it.  If there are no further questions right now, I would reserve the one minute I have left. Probably more like 20 seconds. Thank you, Your Honor. Mr. Ritter? Good morning, and may it please the Court. Complete preemption under Section 301 is an exception to the well-pleaded complaint rule. The exception recognizes Congress' intent in mediating the conflict between an employee pursuing his individual rights under state law to the detriment of the collective rights bargained for by that employee's bargaining unit, specifically by avoiding conflicting interpretations of CBA provisions with regard to state and federal law. Under this exception, courts peek behind the four corners of the operative complaint, disregard artful pleading efforts, and assess the legal character of the claim to determine whether resolving the claim's prima facie elements involves also resolving disputed issues of CBA interpretation under a specific provision, which brings us to this case. UPS employees, including Mr. King, voluntarily chose to unionize, to obtain collective rights, and therefore opt into Section 301's limitations. But to be clear, those limitations did not prohibit Mr. King from pursuing his Asian rights discrimination claims under federal statutes like Title VII or the ADEA, nor did Section 301 prohibit Mr. King from pursuing his hybrid 301 action, which he has done in a separate lawsuit. What Section 301 did prohibit is precisely what Mr. King did in this case, which is to allege state law claims and therein complain about his loss of individual rights under CBA, specifically not to work on Saturdays, to be free from discipline for avoiding his Saturday work, and to subsequently after that not be treated more harshly under progressive discipline policy than younger white employees who he alleges engaged in substantive employment. Opposing counsel's point, I actually sympathize with him as a matter of sort of basic first principles, but it's just not what the law I think says, but that it doesn't require interpretation, that merely reading the collective bargaining room and see who works on Saturdays doesn't require you to interpret anything because it could be plain language. You could just read it and say, oh, so-and-so doesn't have to work on Saturdays. Correct. The interpretive dispute arises when Mr. King complained that I am a Monday through Friday worker, regardless of the express allegations referring to the CBA or not. UPS forced me to work on Saturdays, which requires resolving the issue about what are the terms and conditions of Mr. King's employment. Is he a Monday through Friday worker or is he a Tuesday to Saturday worker? The only way to resolve that conflict is to look to the CBA. Even though you can make a determination as to who's correct under the CBA, the nature of a dispute as to what the CBA requires in UPS management's authority to shift workers from a Monday to Friday to Tuesday to Saturday schedule is all contained in the CBA. Mr. King's implicit interpretation is that under those provisions, I'm a higher seniority than these other drivers who are working these preferential shifts. UPS's interpretation is no, you're not. The only way to resolve that disputed issue of CBA interpretation is to look at the CBA and analyze what do these terms actually mean. You can engage in a plain language interpretation. The contract doesn't have to be ambiguous, but this also isn't a situation where, for example, the CBA says you have 10 days to file a grievance after a disciplinary action. And there's, you know, the mere reference to the CBA if there's grievances filed on day 11, just because of the fact that the grievance was filed late, there's no interpretive dispute as to what 10 days means. However, whenever the terms are not as cut and dry as a clearly objective standard where there's only really just reference to the CBA to see what it says, then that presents a different situation, which is not present here. So because Section 301 completely preempts at least two of the three claims in Mr. King's amended complaint, appellees respectfully request that this court affirm that the district court has subject matter jurisdiction and that it properly rendered judgment on the pleadings. I would like to focus the remainder of the argument, unless questions are directed otherwise, on two political points, the first being the Royal Canin decision and its application in this case, and the second is responding to King's more substantive arguments on the 301 preemption issues. So turning first to Royal Canin, appellees request that this court hold that Royal Canin is not dispositive of the district court's federal question jurisdiction for two reasons. The first is that Royal Canin applied the well-pleaded complaint rule, whereas Section 301 is an exception to that rule. And the second is unlike Royal Canin here, Mr. King did not actually remove any of his 301 preempted claims from his amended complaint. What about the district court's reference to the original state court petition in deciding, I think it was the retaliation claim? And you have said that that's proper. Why is that proper to look back at that original state court petition? So with regard to the retaliation claim, that is the claim that is not at issue with regard to 301 preemption. And so part of the challenge of this case is shifting between the jurisdictional question of 301 preemption and then the merits as a judgment on the pleading. With regard to the retaliation question, setting 301 preemption aside, looking at judgment on the pleading standards, the district court very clearly said the amended complaint is the operative pleading here. The district court first ruled that looking at the amended complaint, we can't tell whether or not Mr. King engaged in any ICRA protected activities, such as opposing race or age discrimination, or what were the basis of his allegation that he engaged in protected activity. The only thing that we know from the face of his amended complaint is that he filed his ICRC charge, which is the Administrative Charge of Discrimination. That was a protected activity, but it postdated pretty much every single adverse employment action that Mr. King was claiming. And so then, and then looking at, well, what were the other allegations of protected activity, Mr. King's argument was that this court can look back at at least the ICRC charge to determine that whenever he talks about complaints, but he changed from his original state court complaint from grievances to his amended complaint, calling them complaints, that looking back at his first amended, sorry, the original state court petition, the context that was removed was that he's still talking about the exact same complaints, he just calls them something different. And so my question is, was it proper to do that, to go outside and look at the superseded complaint when the amended complaint was, as the district court recognized, the operative one? Sure. So the appellate position on that would be that it's unclear because the original state court petition is still a matter of public record. We have Royal Canin who's looking at the jurisdictional question as to what are the live claims in the suit, and we know that when you look at the superseded complaint, that original state court petition no longer has any effect in the case with regard to a jurisdictional question. But that original state court complaint is still a matter of public record. Amending a complaint doesn't erase the state court original pleading from the record entirely. Courts often refer back to the original complaint to determine, was this thing even filed on time? Did it meet the statute of limitations? There's still references back to the original complaint for other purposes outside of the context of subject matter. Was it, the way I read it, maybe I'm really out to lunch on this one, but I read it as an either or, which is either he's incorporating the original complaints that he was talking about, the union grievances, or he's not. And if he is doing it, it would be Garmin preempted. And if he isn't doing it, it fails as a matter of law because there's no temporal proximity between the other complaint and the adverse employment action, or there was no adverse employment action at all. That's how I kind of read it, but maybe I'm wrong about that. Appellate probably agree with your Honor's reading of it in that to address your Honor's question is that even if this court wanted to conclude that it's totally improper to consider a superseded complaint when reviewing the 12C or 12B6 motion, any error was harmless. Because at the end of the day, when you look just to the four corners of the amended complaint, there is no alleged protected activity except for the ICRC charge. So even the references to the replacement of the word grievance with complaint, you're saying there's just nothing there? Correct. And even further looking at the documents of record, the grievances do appear on a record and reflect that. And none of those grievances did Mr. King complain of race discrimination or age discrimination or anything else that would be prohibited by the ICRA. Those grievances established that he was complaining about breaches of the CBA with regard to having to work on Saturday, with being terminated and disciplined without just cause, and being harassed in a general sense by management. But in order to be a protected activity under the ICRA, there must be an opposition to an And none of that appears in any of his grievances. Is the other parallel case, I think you've referred to it as King 2, is that still pending and ongoing? That is outside of the record, and so it depends on how Your Honor would like me to answer that question. Is it public record? Yes. It's settled. Okay. Thank you. I may only have 57 seconds left, but I did want to provide that case to you, Judge Strauss. Meyer, 167 F3rd 1048, references regarding the similar protections, Your Honor. I believe it's also may be referenced in Lingle as well. However, I did want to address something that the defense counsel mentioned, and I think Judge Kelly was bringing it up, that they claim there's nothing that has to be protected under the Iowa Civil Rights Act. And the problem is, I think that's a misconstruction of Iowa law. Iowa law does not necessarily require that you have to have filed something with the Iowa Civil Rights Act. Iowa law requires that you have had to complain about something that there's a protected activity. And under the amended petition, he was retaliated against. He claimed he was retaliated against for those complaints. And I think I'm out of time. I would answer Judge Erickson's previous question, but unless the court- Yeah, if you've got an answer, I'd like to hear it. Yes, Your Honor. So I think if you look at the amended petition page in the factual background, you're going to go after the Saturdays discussion. There's talk about how he was mocked about his requesting of not working Saturdays and all that stuff, and how it was given to younger white drivers and all that. The fact is that the basis for the discrimination claim, as Judge Strauss mentioned, it doesn't matter that there was actually- that he may or may not have had the determination of the- he may or may not have had that determination, but it has everything more to do with the fact that the intent of the defendants and the giving to other drivers who were not of the protected class, Your Honor. Thank you. I apologize for the extra time, even more so than I already had. So thank you very much. Thank you both.